UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA MARIE CONNORS, | ) | CIVIL ACTION NO. 4:20-CV-2338 |
| *On behalf of R.M.C.* | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Christina Marie Connors, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her minor daughter's application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating  42 U.S.C. §405(g) by reference).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

II.    BACKGROUND & PROCEDURAL HISTORY

On February 11, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 12; Doc. 16-2, p. 13). In this application, Plaintiff alleged R.M.C. became disabled on September 8, 2012, when she was eleven years old, due to the following conditions: autism, OCD, ADHD, and sleep apnea. (Admin. Tr. 176; Doc. 16-6, p. 27).

On June 6, 2019, the application was denied at the initial level of administrative review. (Admin. Tr. 80; Doc. 16-4, p. 6). On October 15, 2019, Plaintiff requested an administrative hearing. (Admin. Tr. 93; Doc. 16-4, p. 19).

On April 1, 2020, Plaintiff and R.M.C. appeared with counsel and testified during a hearing before Administrative Law Judge Lawrence J. Neary (the "ALJ"). (Admin. Tr. 12; Doc. 16-2, p. 13). On April 27, 2020, the ALJ issued a decision

denying the application for benefits. (Admin. Tr. 9; Doc. 16-2, p. 10). On April 27, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 136; Doc. 16-2, p. 62).

On October 29, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 16-2, p. 2).

On December 14, 2020, Plaintiff initiated this action on R.M.C.'s behalf by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court reverse the decision of the Appeals Council, to award R.M.C. benefits, and any relief that the Court deems justified. *Id*.

On June 28, 2021, the Commissioner filed an Answer. (Doc. 15). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 16).

Plaintiff's Brief (Doc. 23) and the Commissioner's Brief (Doc. 23) have been filed. Plaintiff did not file a reply brief. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S EVALUATION OF CHILDHOOD DISABILITY APPLICATIONS

A claimant younger than the age of 18 ("child") shall be considered disabled under Title XVI of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i);

20 C.F.R. § 416.906. Notwithstanding the foregoing, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.906. [2]

In determining whether a child is eligible for SSI payments due to disability, The ALJ utilizes a three-step evaluation process. During this process, the ALJ must determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. If the ALJ concludes that the child is not disabled at any step of this this process, the analysis will end at that point. *See* 20 C.F.R. § 416.924.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 30, 2019.

ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raised the following issues in her statement of errors:

(1)   Whether the Administrative Law Judge erred in and abused his discretion by failing to properly consider the child's limitations under the Functional Domains, when considering her severe impairments as identified by the Administrative Law Judge, including Autism Spectrum Disorder, ADHD/OCD, and Adjustment Disorder with Depression and Anxiety?

(2)   Whether the Administrative Law Judge erred and abused his discretion by relying upon the findings of the State Agency Consultant, who never examined the child, and offered opinions without most of the medical evidence submitted in this matter, as opposed to the opinions offered in the Teacher's Questionnaire's which were completed by multiple different teachers and are consistent with the child's mother's testimony and notes of treatment?

(Doc. 23, p. 1).

A.    THE ALJ'S DECISION DENYING R.M.C.'S APPLICATION

In his April 2020 decision, the ALJ found that R.M.C. was a school-age child during the relevant period. *See* 20 C.F.R. § 416.926a(g)(2) (defining school age child as age six to twelve). Then, the ALJ evaluated R.M.C.'s application at steps one through three of the sequential evaluation process.

At step one, the ALJ found that R.M.C. did not engage in substantial gainful activity at any point between February 11, 2019 (the alleged onset date) and April 27, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 13; Doc. 16-2, p. 14). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: autism spectrum disorder, attention deficit hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD"), and adjustment disorder with depression and anxiety. (*Id.*)

At step three, the ALJ found that, R.M.C. did not have an impairment or combination of impairments that medically or functionally equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

When evaluating whether R.M.C.'s impairments were functionally equivalent to a listing, the ALJ found that R.M.C. had less than marked limitations in the domains of: acquiring and using information; attending and completing tasks;

interacting and relating with others; ability to care for herself. (Admin. Tr. 15; Doc. 16-2, p. 16). The ALJ found R.M.C. had no limitation in moving abuse and manipulating objects, and health and physical well-being. (*Id.*). Thus, the ALJ found R.M.C. not to be disabled under the Social Security Act. (Admin. Tr. 20; Doc. 16-2, p. 21).

     B.    Whether the ALJ Erred in His Listings Analysis

Plaintiff argues that the ALJ erred when he failed to find R.M.C. had marked limitations in the following four domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for yourself. (Doc. 23, p. 14). To support this, Plaintiff argues that R.M.C.'s medical and school records, her mother's testimony, and documented "severe mental health related impairments, and the limitations associated therewith," all support marked limitation finding in the aforementioned domains, and that the ALJ failed to review the record as a whole. (*Id.* at pp. 14-18).

The Commissioner argues that substantial evidence supported the ALJ's findings on these domains, and that the record supports his conclusion. (Doc. 24, pp. 20-23). To that end, the Commissioner marshals citations to the record that supports her argument that the ALJ's decision is supported by substantial evidence. (*Id.*). I agree with the Commissioner; substantial evidence supports the ALJ's findings in

the acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself domains.

Before I begin, Plaintiff's arguments on this issue essentially asks the Court to reweigh evidence or make new factual findings. That is not this Court's role. *See Williams v. Kijakazi*, No. 20-cv-624, 2021 WL 4439438, at * 10 (M.D. Pa. Sept. 28, 2021) ("this Court may not invade the ALJ's province as finder of fact in disability proceedings"). Additionally, Plaintiff broadly alleges that the ALJ erred in his domain findings, but she fails to specifically argue why the ALJ erred in the acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for yourself domains. [3] However, to be thorough, I will discuss all four domains that Plaintiff challenges.

### 1.    Acquiring and Using Information

In analyzing this domain, the ALJ considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). In considering this, the ALJ is guided by the following standard:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to

---

[3] In Plaintiff's Brief, she lists all 11 different limitations and 19 pieces of medical evidence she believes the ALJ did not properly analyze but does not explain how these 11 limitations or 19 pieces of medical evidence challenge the specific domain findings. (Doc. 23, p. 14).

demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

The ALJ found that R.M.C. has a less than marked limitation in this domain. (Admin. Tr. 15; Doc. 16-2, p. 16). However, while Plaintiff challenges the ALJ's findings on this domain, she does not specify how the ALJ erred in this specific domain. Instead, she lists a plethora of "impairments, issues, and limitations" and asserts "the findings above, would support at least marked limitations in the domains of (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for yourself." (Doc. 23, pp. 14-15). Thus, Plaintiff's Brief lacks a specific argument on this issue and fails to show how the ALJ erred in analyzing this domain. *Cruz v. Kijakazi*, No. 20-cv-2029, 2022 U.S. Dist. LEXIS 31110, at *11-12 (M.D. Pa. Feb. 22, 2022) (citing *Hutcheson v. Berryhill*, No. 16-cv-2023, 2017 WL 3581675, at * 26 (M.D. Pa. Aug. 18, 2017)).

Nonetheless, the Court scraped through the brief and picked out the limitations that might apply to this domain. The only limitation that Plaintiff

identifies that could plausibly be related to this domain is "she does poorly on tests and quizzes and does not finish assignments." (Doc. 23, p. 14). Additionally, Plaintiff argues that the ALJ erred in not crediting her testimony. (*Id.* at p. 15). However, the ALJ's findings on this domain are supported by substantial evidence.

The ALJ supported his findings by looking at R.M.C.'s educational and medical evidence. The ALJ properly considered R.M.C.'s grades and test scores, which showed that in a spring 2019 Pennsylvania System of School Assessment (PSSA) exam, R.M.C. scored a proficient in English/language arts, and a basic in mathematics.[4] (Admin. Tr. 250; Doc. 16-6, p. 101). Further, in that school year, Plaintiff received mostly Bs and Cs in her final grades. (Admin. Tr. 249; Doc. 16-6, p. 100). The ALJ also considered R.M.C.'s individualized educational program update, where the school determined R.M.C. needed 30 minutes a week to address pragmatic language skills, 40 minutes a month of occupational therapy, and itinerant autistic support services. (Admin. Tr. 294; Doc. 16-8, p. 27). In the IEP, R.M.C.'s teachers noted she has As and Bs in reading, science, and math. (Admin. Tr. 295; Doc. 16-8, p. 28). However, her math teacher noted that in one quarter she received

---

[4] The test is scored on four level criteria, from below basic, basic, proficient, and advanced. (Admin. Tr. 250; Doc. 16-6, p. 101). Plaintiff was one point off the advanced cut off score in language arts. (Admin. Tr. 251; Doc. 16-6, p. 102).

a 62% and that she "occasionally. . . has to be re-focused, but usually she is on task and prepared." (*Id.*).

Additionally, the ALJ considered two state agency consultants' opinions, who both believed that R.M.C. has a less than marked limitation in acquiring and using information. (Admin. Tr. 18; Doc. 16-2, p. 19) (citing Admin. Tr. 60; Doc. 16-3, p. 6; Admin. Tr. 71; Doc. 16-3, p. 17). The ALJ also considered the opinions of R.M.C.'s teachers, who believed that R.M.C. had slight to moderate limitations in this domain. (Admin. Tr. 18-19; Doc. 16-2, pp. 19-20) (citing Admin. Tr. 254; Doc. 16-7, p. 3). Finally, the ALJ considered Plaintiff's testimony, which described R.M.C.'s inability to complete her homework and her tantrums, among other maladaptive behaviors. (Admin. Tr. 15; Doc. 16-2, p. 16) (citing Admin. Tr. 39- 41; Doc. 16-2, pp. 40-42).

As the record shows, R.M.C.'s teachers noted that she had average grades, and only needed minimal educational accommodations. Further, the ALJ properly considered the evidence before him, including Plaintiff's grades, IEP plans, and professional opinions. Therefore, the ALJ was within his discretion to find that R.M.C. had a less than marked limitation in this domain. I acknowledge Plaintiff's concerns that there is other evidence that demonstrate more favorable findings, such as her mother's testimony. However, even if there "is contrary evidence that would

justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court will uphold the Commissioner's decision. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citations omitted). Given this deferential standard, I find no error with the ALJ's findings on this domain.

2.      Attending and Completing Tasks

In analyzing the attending and completing tasks domain, the ALJ will consider "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). In considering this domain, the ALJ is guided by the following standard:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 420.926a(h)(2)(iv).

Again, Plaintiff argues that the ALJ did not analyze the record as a whole, but fails to articulate a specific argument on how the ALJ erred in analyzing this domain. Nonetheless, Plaintiff cites to the following limitations that are seemingly related to the attending and competing tasks domain: limited attention and insight, "trouble with concentration and focus at home and in school," and "cycles between periods when she does her work and others when she does not get things done." (Doc. 23, p. 14). However, the ALJ's findings on this domain are supported by substantial evidence.

The ALJ supported his findings by looking at R.M.C.'s educational and medical evidence. Among other things, the ALJ looked at R.M.C.'s February 2019 IEP, which indicated minimal educational accommodations and that she largely participated in a normal classroom setting. Further, the ALJ analyzed R.M.C.'s medical records, which included the following findings:

- In a March 7, 2019 visit with Dr. David Prado, D.O., he noted that R.M.C. appeared "hyperactive and required direction at times," but she was "[o]verall . . . cooperative and responded well to redirection. (Admin. Tr. 601; Doc. 16-11, p. 37).

- In an April 11, 2019 visit with Dr. Prado, he noted that R.M.C. had limited attention, and poor impulse control. (Admin. Tr. 598; Doc. 16-11, p. 34).

- In a June 6, 2019 visit with Dr. Prado, he noted that R.M.C. had a linear thought process, grossly intact memory, but a limited attention. (Admin. Tr. 594; Doc. 16-11, p. 30).

- In an August 1, 2019 visit with Dr. Prado, he noted that R.M.C. improved, and had "no significant impulsive behaviors" reported by R.M.C. or her mother. (Admin. Tr. 590; Doc. 16-11, p. 26). He also noted that R.M.C. had a decrease in depressive and anxiety symptoms after R.M.C. started medication. (*Id.*).

- In a September 19, 2019 visit with Dr. Prado, he noted that R.M.C. had not been fully compliant with her medication regimen, so it was difficult to assess whether the medications had been helpful in controlling her symptoms. (Admin. Tr. 587; Doc. 16-11, p. 23). He noted that Plaintiff had limited attention, but a linear thought process. (*Id.*).

- In a November 14, 2019 visit with Dr. Prado, he noted that R.M.C. has been stable, and compliant with her medications. (Admin. Tr. 583; Doc.

16-11, p. 19). He noted that she had "some distractibility, but able to be redirected." (*Id.*).

In addition to the medical and educational evidence, the ALJ considered two state agency consultants' opinions, who both believed that R.M.C. had a less than marked limitation in attending and completing tasks. (Admin. Tr. 18; Doc. 16-2, p. 19) (citing Admin. Tr. 60; Doc. 16-3, p. 6; Admin. Tr. 71; Doc. 16-3, p. 17). The ALJ also considered the opinions of R.M.C.'s teachers, who believed that R.M.C. has moderate limitations in this domain. (Admin. Tr. 18-19; Doc. 16-2, pp. 19-20) (citing Admin. Tr. 255; Doc. 16-7, p. 4). Finally, the ALJ considered Plaintiff's testimony, which described RMC's inability to complete her homework, and her tantrums, among other maladaptive behaviors. (Admin. Tr. 15; Doc. 16-2, p. 16) (citing Admin. Tr. 39- 41; Doc. 16-2, pp. 40-42).

After reviewing the record, I find no error with the ALJ's findings on this domain. The ALJ properly considered the evidence before him, including Plaintiff's grades, IEP plans, and professional opinions. And as stated previously, even if there is contrary evidence to the ALJ's findings, the contrary evidence is not overwhelming. Thus, substantial evidence supports the ALJ's finding on this manner. *Johnson*, 497 F. App'x at 201 (3d Cir. 2012).

3.      Interacting and Relating With Others

In the interacting and relating with others domain, the ALJ must consider "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). In doing this analysis, the ALJ is guided by the following standard:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

In this domain, the ALJ concluded that R.M.C. has a less than marked limitation in this domain. He explained, in part, that:

> The claimant has difficulties with pragmatic speech and understanding social cues. Per the June 2019 update, it was noted that the claimant was continuing to work on self-esteem and had mastered the perspective taking goal but continued to have difficulty with generalizing these skills to the general education setting. It was noted that the claimant thinks that she is engaging in appropriate classroom behavior. It was noted that the claimant will "banter" and is not overtly aggressive though with difficulty understanding the perspective of the instructor and expectation in the school community (Exhibit 10F).

Again, Plaintiff argues that the ALJ did not analyze the record as a whole, but fails to articulate a specific argument on how the ALJ erred in analyzing this domain. Nonetheless, Plaintiff cites to the following limitations that are seemingly related to the interacting and relating with others domain: R.M.C. is non-compliant, disrespectful, and confrontational; lacks personal skills; has bad tantrums with her brother; and has escalating outburst behaviors. Additionally, Plaintiff believes that the ALJ wrongly rejected Plaintiff's testimony about R.M.C. not having friends, hitting her mother and screaming at her, her crying spells, and throwing daily tantrums. However, upon review of the record and the ALJ's reasoning, I find no error.

To support his findings, the ALJ looked at the entire record. For instance, the ALJ looked at R.M.C.'s February 2019 IEP, which noted that she "has specifically been working on her perspective taking skills in order to help with understanding how other people feel." (Admin. Tr. 510; Doc. 16-10, p. 51). A teacher noted that:

> [d]uring the first quarter, [RMC] was able to take another person's perspective with 87% accuracy. During the second quarter, Rose was asked to take other perspectives in some more complex social situations. Rose was able to complete this task with 61% accuracy.

(*Id.*) (all errors in the original). The IEP noted that R.M.C.'s strengths include: a pleasant and cooperative attitude during occupational therapy sessions; appropriate

self-help skills; excellent articulation skills, language kills, and vocabulary skills; interest in interacting with her peers; identifies most expected behaviors; identifies most of her emotions in a small group, and uses appropriate problem solving strategies. (Admin. Tr. 512, Doc. 16-10, p. 53). In terms of weaknesses, it was noted that R.M.C. needed to improve her perspective taking skills, her direction following skills, and her problem solving skills. (*Id.*).

In a June 2019 update to the IEP, R.M.C. "met or exceeded" her goal of "demonstrating perspective taking skills and identifying the thoughts, feelings and physical presence of herself and others during an adult directed peer group with 100% independence over three consecutive groups." (Admin. Tr. 523; Doc. 16-10, p. 64). It was noted that she banters but is not overly aggressive. (*Id.*). However, she still had to work on perspective taking as applied to the general education setting. (*Id.*).

Additionally, the ALJ looked at R.M.C.'s treatment records. In visits with Dr. Prado, he occasionally noted that R.M.C. talked back to her mom, (Admin. Tr. 598; Doc. 16-11, p. 34), and was irritable, (Admin. Tr. 587; Doc. 16-11, p. 23), but in other visits, he noted that she was "calm and cooperative" (Admin. Tr. 594; Doc. 16-11, p. 30); (Admin. Tr. 590; Doc. 16-11, p. 26); (Admin. Tr. 584; Doc. 16-1, p.

20), was respectful to her mom, (Admin. Tr. 594; Doc. 16-11, p. 30), and well engaged. (Admin. Tr. 590; Doc. 16-11, p. 26).

Further, the ALJ also considered the medical opinions of two state agency consultants, who believed that she had a less than marked limitation in interacting and relating with others. (Admin. Tr. 18; Doc. 16-2, p. 19) (citing Admin. Tr. 60; Doc. 16-3, p. 6; Admin. Tr. 71; Doc. 16-3, p. 17). The ALJ also considered the teachers' questionnaire, which he found not persuasive.

Thus, based on a review of the evidence, it was reasonable for the ALJ to find that R.M.C. had a less than marked limitation in this domain. The ALJ properly concluded that the evidence in the record did not align with Plaintiff's testimony or the teachers' questionnaire. Further, it appears that Plaintiff is asking the Court to reweigh the evidence, and for me to credit Plaintiff's testimony more than the ALJ did. That is not the Court's role. Therefore, I can find no reversible error on this point.

4.    Caring For Yourself

Finally, Plaintiff claims that the ALJ erred by finding a less than marked limitation in the caring for yourself domain. In this domain, the ALJ must consider "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how

you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). In doing this analysis, the ALJ considers:

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

> 20 C.F.R. § 416.926a(k)(2)(iv).

As applied here, the ALJ concluded, in part:

> [R.M.C.] has a less than marked limitation in caring for herself. Consistent with her history, the claimant has some sensitivities to fabrics and clothing and has had issues with wearing feminine hygiene products. The school nurse advised that she was working on this issue with the claimant (Exhibit 12F). The record indicates the claimant reported having suicidal thoughts on one occasion but with no plan or intent and which occurred in home setting that was reported as stressful by both the claimant and her mother. The claimant had no further suicidal thoughts and had overall mood stability with medication (Exhibit 14F).

Again, Plaintiff does not meaningfully challenge the ALJ's finding of a less than marked limitation in the caring for yourself domain. Instead, Plaintiff claims that the ALJ failed to review the record as a whole and insists the ALJ should have

given Plaintiff's testimony more weight. Plaintiff focuses on the allegation that the ALJ failed to consider the entire record on R.M.C.'s hygiene issues and bedwetting behavior.  However, upon review of the record, the ALJ's decision to find a less than marked limitation in this domain is supported by substantial evidence.

The record shows that R.M.C. had a few incidents of poor hygiene, including two incidents of poor feminine hygiene after her first menses. (Admin. Tr. 551; Doc. 16-10, p. 93). However, the school nurse noted that she was actively coaching R.M.C. on proper hygiene. (*Id.*). Additionally, as the ALJ pointed out, in R.M.C.'s second visit with Dr. Prado, she admitted to having suicidal ideation, but did not have a plan, or have self-injurious behaviors. (Admin. Tr. 597; Doc. 16-11, p. 33). In later visits with Dr. Prado, he notes generally normal findings, including:

- A June 6, 2019 visit, Dr. Prado noted that R.M.C. had a "happy" mood, dressed appropriately, had good grooming and hygiene, and no suicidal, homicidal or paranoid ideation. (Admin. Tr. 594; Doc. 16-11, p. 30).

- In an August 1, 2019 visit, Dr. Prado noted that R.M.C. had a decrease in depressive and anxiety symptoms, no current or recent suicidal ideation, no self-injurious behaviors, and no significant impulsive behaviors. (Admin. Tr. 590-91; Doc. 16-11, pp. 26-27). He noted her mood was stable. (*Id.*).

- In a September 19, 2019 visit with Dr. Prado, he noted that R.M.C. had a "fine" mood, was irritable, but had no suicidal ideation, had good grooming and hygiene, and full affect. (Admin. Tr. 587; Doc. 16-11, p. 23). He noted that she was not fully compliant with her medications, and as such, it was difficult for him to assess whether the medications were helping. (*Id.*).

- In a November 14, 2019 visit, Dr. Prado noted that R.M.C. "appeared to be in overall good spirits." (Admin. Tr. 584; Doc. 16-11, p. 20). He noted that R.M.C. had good grooming and hygiene, no suicidal ideation, and reactive affect. (*Id.*). Dr. Prado concluded that R.M.C. was stable, and now that she is compliant with her medications, there has been a decrease in depressive symptoms. (*Id.*).

Additionally, the ALJ examined the opinions of two state agency consultants who found that R.M.C. had a less than marked in caring for herself, a teachers' questionnaire, and the testimony of R.M.C.'s mother, who said R.M.C. neglects her hygiene and sometimes does not want to get out of bed. (Admin. Tr. 15-19; Doc. 16-2, pp. 16-20).

Thus, despite her mother's testimony otherwise, it was reasonable for the ALJ to find that R.M.C. had a less than marked limitation in this domain. The ALJ

properly concluded that the evidence in the record did not align with Plaintiff's testimony. Further, it appears that Plaintiff is asking the Court to reweigh the evidence, and for me to credit Plaintiff's testimony more than the ALJ did. That is not the Court's role. Therefore, I can find no reversible error on this point.

### C.   WHETHER THE ALJ ERRED IN NOT GIVING MORE WEIGHT TO RMC'S TEACHER'S OPINIONS

Plaintiff argues that the ALJ erred when he found R.M.C.'s teachers' opinions as only "somewhat persuasive," and yet found the state agency consultant's opinions as persuasive.  (Doc. 23, pp. 22-23). Plaintiff contends that the teachers' opinions must be given more weight because they interact more frequently with R.M.C. and relies on the legal standard for medical opinion evidence to support her argument. (*Id.*). The Commissioner refutes these arguments by arguing that medical opinion standards do not apply to teacher questionnaires, and that the ALJ properly explained his reasoning on why he found the teachers' questionnaire "somewhat persuasive" and the state agency consultants' opinion persuasive. (Doc. 24, pp. 25-26). On this point, I agree with the Commissioner; there is no reversible error on this point.

The ALJ summarized the teacher questionnaire this way:

The record contains a teacher questionnaire dated January 27, 2020, and which indicates that it was completed by "Silver Sharks Teachers" with the following names noted below: Tyler Binkley (math teacher), Bethany Garber (special education teacher and indicated to be the "primary contact"), Dan Cotchen (social studies teacher), and Jen Hite

(ELA teacher). Per the report, the claimant has no problems observed with moving about and manipulating objects. Regarding acquiring and using information, the claimant has a serious problem providing organized oral explanations and adequate descriptions and applying problem solving skills in class discussions and an obvious problem understanding and participating in class discussions and expressing ideas in written form with otherwise slight problems in that area. Regarding attending and completing tasks, she has a serious problem focusing long enough to finish assigned activity or task, completing class/homework assignments, working without distracting self, and working at reasonable pace/finishing on time and an obvious problem paying attention when spoken to directly, refocusing to task when necessary, carrying out multi-step instructions, and completing work accurately without careless mistakes with other slight problems. Regarding interacting and relating with others, she has a very serious problem expressing anger appropriately, a serious problem playing cooperatively with other children, making and keeping friends, following rules, respecting/obeying adults in authority, and using language appropriate to the situation and listener, and an obvious problem with seeking attention appropriately, asking permission appropriately, introducing and maintaining relevant and appropriate topics of conversation, and taking turns in a conversation with a few slight problems. Regarding caring for herself, she has a very serious problem handling frustration appropriately, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment, a serious problem being patient when necessary, taking care of personal hygiene, and identifying and appropriately asserting emotional needs, and an obvious problem with knowing when to ask for help with a few other slight problems (Exhibit 16E).

(Admin. Tr. 18-19; Doc. 16-2, pp. 19-20).

The ALJ concluded:

This report is somewhat persuasive, as it indicates that the claimant has difficulties in the above domains. While this questionnaire is reportedly based on multiple teachers' observations of the claimant, such

limitations are not consistent with the claimant's level of learning support services, her intellectual ability, which as noted on the report she is more capable than she shows. It was noted that the claimant may become aggressive, disrespectful, and rude during class but that she can be re-directed by teachers setting time frames and can be polite and remain on-task when working on preferred topics/tasks.

(*Id.*).

While the ALJ did not find the teachers' opinions persuasive, he found the opinions of state agency consultants Richard Small, Ph.D. and Edward Jonas, Ph.D. persuasive. Dr. Small opined that R.M.C. had

a less than marked limitation with acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. She has no limitation with moving about and manipulating objects or with her health and physical well-being.

(*Id.*).

Dr. Jonas concurred with Dr. Small's findings. The ALJ found these opinions persuasive because:

As State agency consultants, Dr. Small and Dr. Jonas reviewed the claimant's available treatment and academic records prior to rendering their opinions, which are consistent with the record as a whole including the additional evidence received at the hearing level, indicating that the claimant's level of school support has remained unchanged. They also supported their assessments. Dr. Small noted the claimant has a history of ADHD, receives learning support services but has an above average IQ, has friends but with some difficulty with adults and some tantrum behaviors. Dr. Jonas also noted the claimant's history of ADHD and receives learning support services at school. He noted the claimant's mild pragmatic speech disorder and attends social skills programming at school. He noted the claimant's reported suicidal

Page 27 of 29

ideation in April 2019 but with no intent and no evidence of psychosis and that she follows up with outpatient medication management (Exhibit 3A).

(*Id.*).

In this case, the ALJ's decision to find the teachers' questionnaire as somewhat persuasive is supported by substantial evidence. First, an ALJ does not have to discuss the supportability or consistency of the opinion because a teacher's opinion is not a medical opinion. *Maisonet v. Kijakazi*, No. 20-cv-5847, 2022 WL at * 30 (E.D. Pa. June 7, 2022); *see also* 20 C.F.R. § 416.902 (teachers are not a "acceptable medical source"); 20 C.F.R. § 913 (medical opinions are statements from a "medical source"); 20 C.F.R. § 416.920c (in weighing *medical opinions*, the ALJ must discuss the supportability and consistency of the opinion). Instead, when discussing teachers' opinions, an "ALJ [is] not required to evaluate their opinions in any specific manner; rather, he simply needed to 'consider' these opinions." *Kelly v. Comm'r of Soc. Sec.*, No. 20-cv-13109, 2022 WL 1105664, at *15 n.4 (E.D. Mich. Apr. 13, 2022). Thus, it was not an error that the ALJ only discussed the teachers' opinion's consistency.

Second, Plaintiff faults the ALJ for not giving more weight to the teachers' opinion. However, a federal court cannot reweigh the evidence on the record. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As analyzed in the

preceding section, the ALJ looked extensively at the entire record, and considered medical and academic evidence in rejecting the teachers' opinion. And because the ALJ considered the record as a whole (with extensive and specific citations), even if there "is contrary evidence that would justify the opposition conclusion, as long as the substantial evidence standard is satisfied," this Court will uphold the Commissioner's decision. *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citations omitted). Therefore, the ALJ's handling of the opinion evidence is supported by substantial evidence.

V.     CONCLUSION

Accordingly, Plaintiff's request for relief be denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of Kilolo Kijakazi.

(3) An appropriate Order will issue.

Date: September 6, 2022                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge